IN THE UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH

| | |
|---|---|
| ROBYN ANN HOWELL,<br><br>　　　　　Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No.  2:22-cv-571 CW<br>*Related Case No*:  2:18-cr-379<br><br>Judge Clark Waddoups |

## INTRODUCTION

Petitioner Robyn Ann Howell ("Petitioner") pled "guilty to theft of government money," in violation of 18 U.S.C. § 641 (hereinafter "§ 641").  She now petitions the court "to vacate and set aside her conviction pursuant to 28 U.S.C. § 2255" because her "plea was the product of ineffective assistance of counsel."  Petition to Vacate, at 1 (ECF No. 1).[1]  Petitioner asserts she received ineffective assistance of counsel because her attorney "advised her that she did not have any defenses and should plead guilty."  *Id.* at 5.  According to Petitioner, had her counsel adequately "investigate[d] the underlying facts of the case," he would have discovered her actual innocence because the money she took belonged to her former husband and not to the Social Security Administration.  *Id.* at 5–6.  The court denies the petition.

---

[1]  Pincites to the record refer to the ECF pagination at the top of the page and not to page numbering at the bottom of the page.  Because this memorandum decision involves references to a civil case and a criminal case, the two dockets shall be distinguished by citing to the criminal record as "(ECF No. ___ in Criminal Case)."

## FACTUAL BACKGROUND

Danny Howell filed for Social Security Disability in July 2014. Presentence Rpt., at 4 (ECF No. 47 in Criminal Case). At the time of his application, he was married to Petitioner, and they shared a joint bank account. *Id.*; Divorce Decree, at 6 (ECF No. 1-1). Mr. Howell specified on his application that Social Security payments made to him should be deposited into that joint bank account. Presentence Rpt., at 4 (ECF No. 47 in Criminal Case); Hr. Tr., at 27, 29 (ECF No. 90 in Criminal Case).

In April 2015, Mr. Howell and Petitioner divorced. Hr. Tr., at 44 (ECF No. 90 in Criminal Case). The State court ordered that Mr. Howell be removed from the joint bank account. Divorce Decree, at 6 (ECF No. 1-1). Subsequent bank statements show that the court order was carried out and that Petitioner became the sole person on the account shortly after the parties divorced. *Cf* April 17, 2015 Bank Statement (listing Mr. and Ms. Howell) *with* May 18, 2015 Bank Statement (listing only Ms. Howell) (ECF No. 41-5 at 20, 26 in Criminal Case).

In 2017, the Social Security Administration ("SSA") approved Mr. Howell's disability application. In May 2017, SSA deposited a lump sum payment of $68,726 into the account Mr. Howell specified on his application. *See id.* at 144. An initial monthly payment of $1,446 was then deposited into that same account in June 2017, followed by four monthly payments of $1,580. *Id.* at 156, 162, 174, 180. In total, SSA deposited $76,492 into Petitioner's bank account, all of which Petitioner depleted for her own use. Hr. Tr. at 22–23, 49–50 (ECF No. 90 in Criminal Case). After not receiving any of the money, Mr. Howell learned that the payments had been deposited into the account he had shared with Petitioner because Mr. Howell had failed to notify SSA about the account change. *Id.* at 29, 34–35.

Petitioner knew the money deposited into her account were payments from SSA to Mr. Howell. *Id.* at 48–49 (stating Petitioner knew her former husband had been approved for Social Security disability, and that she got an attorney when the lump sum payment was deposited). She asserts that she was entitled to over $40,000 of the money because Mr. Howell had allegedly taken part of her assets and had failed to satisfy debts he was obligated to pay. *Id.* at 51–58. Petitioner does not dispute, however, that she stole at least part of the money. *Id.* at 70. Although Petitioner admits that she stole at least part of the money, she contends she stole it from her former husband and not from SSA because SSA acted in accordance with Mr. Howell's instructions on where to deposit the funds and lost any claim to the money once it did so. Petitioner further asserts that had her counsel "undertaken even minimal investigation," he would have known these facts, and consequently, that Petitioner "was actually innocent of stealing from the government." Petition, at 5–6 (ECF No. 1).

## ANALYSIS

I. **STANDARDS OF PROOF**

    A. **Ineffective Assistance of Counsel**

"[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quotations and citation omitted). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687 (citations omitted). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. Objectively, counsel is required "to consult with the defendant

on important decisions." *Id.* at 688. When rendering legal advice, the advice must be "within the range of competence demanded of attorneys in criminal cases." *Id.* at 687 (citation omitted).

Ineffective assistance of counsel occurs when (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense." *Id.* at 687. This means the defendant must show errors so significant "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Finally, a court "must consider the totality of the evidence before the judge or jury." *Id.* at 695.

The above principles apply the same in "collateral proceedings as they do on direct appeal or in motions for a new trial." *Id.* at 697. A court does not have to approach the elements "in the same order or even . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*

### B. Actual Innocence

To prove actual innocence, "[t]he petitioner must show that it is more likely than not that no reasonable juror would have convicted [her] in the light of the new evidence." *United States v. Singleton*, 462 F. App'x 857, 858 (10th Cir. 2012) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)). "Actual innocence requires a showing of factual innocence, not merely legal insufficiency." *Id.* (citing *Bousely v. United States*, 523 U.S. 614, 623 (1998)).

In this case, Petitioner was convicted of theft of government money under § 641. That section states: "Whoever embezzles, steals, purloins, or knowingly converts to his use . . . or

without authority . . . disposes of . . . money, or thing of value of the United States or of any department or agency thereof, . . . [s]hall be fined under this title or imprisoned." 18 U.S.C. § 641. Petitioner contends she is innocent of a crime under § 641 because the money she stole was not SSA's. Specifically, Petitioner contends she "believed the money in her bank account belonged to her ex-husband and that she was legally entitled to the money she took." Petition, at 6 (ECF No. 1). To prove guilt under § 641, however, the government generally does not have to prove knowledge that the "thing of value" was property of the United States. *United States v. Speir*, 564 F.2d 934, 938 (10th Cir. 1977). Thus, the issue before the court is not whether Petitioner knew to whom the money belonged. It is whether the money at issue belonged to SSA or to Mr. Howell.

      C.      **Ownership of Money Deposited by a Federal Agency**

Whether money belongs to the government is a nuanced area of law, but certain absolutes have developed. It is well established that when an SSA recipient dies, that person is no longer entitled to SSA payments. If SSA continues to deposit funds into that former recipient's account, the money remains the property of SSA, and may be collected back by SSA. This is so even if the account is held jointly with someone else. *United States v. Samson*, 433 F. Supp. 3d 1046, 1054–55 (S.D. Tex. 2020). Thus, if a joint account holder or another uses any portion of the funds, it constitutes theft of government money. *Id.*; *see generally United States v. Walker*, 563 F. Supp. 805 (S.D. Iowa 1983).

In contrast, in *United States v. Howard*, 787 F. Supp. 769, 770 (S.D. Ohio 1992), social security payments were "direct deposited into the account of a proper social security recipient." The recipient's son then took some of the social security payments for his own use. *Id.* The

court found that the deposits were made into the correct account and to the correct recipient, who was entitled to the money. *Id.* at 771. Moreover, the recipient was not restricted on how she could use the government funds. *Id.* The court therefore concluded the money "did not constitute 'money of the United States' as used in 18 U.S.C. § 641," and the son was acquitted of a *federal* crime. *Id.* (alteration omitted).

Neither *Samson* nor *Howard* is applicable. Because Mr. Howell was entitled to SSA payments, one cannot assume that SSA retained the same rights as they did in *Samson*. Because the payments owed to Mr. Howell never reached his account, one also cannot assume that the SSA was divested of ownership like they were in *Howard*.

The United States mainly relies on *United States v. Griffith*, 584 F.3d 1004 (10th Cir. 2009) to support that Petitioner stole government funds. In *Griffith*, a Veterans Affairs (the "VA") recipient[2] suffered from significant disabilities to the point that the VA concluded the recipient could not "handle his own financial affairs." *Id.* at 1008 (alteration omitted). Debbie L. Griffith, the VA recipient's girlfriend, "signed a VA form entitled 'Responsibilities of a Federal Payee of VA Funds' . . . and was appointed as [the VA recipient's] fiduciary and payee.' *Id.* at 1008—09. In that capacity, Griffith had to ensure that all of the VA recipient's "debts were paid." *Id.* at 1009 (alteration omitted). She was precluded from making any cash withdrawals and from writing "checks for cash." *Id.* Griffith also was precluded from using the VA recipient's funds for any purpose other than for the recipient, and had to have prior authorization for expenditures over a certain amount. *Id.*

---

[2] Although *Griffith* involved payments from the VA, but that does not alter the analysis for purposes of this case because § 641 applies to money received from any federal agency.

Subsequently, Griffith married the VA recipient and his monthly payments increased as a result. *Id.* "Within a month of the marriage," the VA recipient's family "suspect[ed] that Griffith had been defrauding him before the marriage and was continuing to defraud him." *Id.* Their concerns were warranted, and Griffith subsequently was convicted of theft of government money under § 641. On appeal, Griffith challenged the restitution amount, and the Tenth Circuit undertook an analysis to determine who owned the funds that were deposited. The Court concluded that the VA funds had "retain[ed] their identity as 'public money' under § 641." *Id.* at 1021.

As with *Samson* and *Howard*, the facts in *Griffith* are distinguishable from this case. Griffith acted as a fiduciary and payee for the VA recipient. She signed a VA form agreeing to specific terms and conditions. The VA funds were deposited with all of those conditions attached to them, and the VA retained oversight to ensure that the funds were being used as the VA directed. None of those facts are applicable here. Mr. Howell may use his SSA payments without oversight from SSA as to how he spends the money, and Petitioner signed no form to act as Mr. Howell's fiduciary or payee. Consequently, the court is not persuaded that *Griffith* applies to the particular facts of this case.

The United States also cites to the following cases:

> *United States v. Middagh*, 594, F.3d 1291, 1295–96 (10th Cir. 2010) (affirming conviction under [§ 641] for defendant who collected decedent beneficiary's Social Security payments); *United States v. Elwood*, 484 F. App'x 252, 253 (10th Cir. 2012) (unpublished) (affirming sentence of defendant convicted of intercepting an SSA check of a living beneficiary and converting it to his own use); *see also, e.g., United States v. Spear*, 734 F.2d 1, 2 (8th Cir. 1984) (affirming conviction under 18 U.S.C. § 641 for defendant who collected deceased mother's Social Security

>benefits); *United States v. Nissenbaum*, 75 F. App'x 412, 413 (6th Cir. 2003) (unpublished) (same).

Response in Opp'n to Petition, at 8 n.54 (ECF No. 6).  As stated above, the law is well established that a deceased recipient is not entitled to SSA payments, and any payments made to a deceased recipient constitutes money that SSA is entitled to recover.  Mr. Howell is not deceased.  Thus, *Middagh*, *Spear*, and *Nissenbaum* are inapplicable.  *Elwood* likewise is inapplicable.  It involved an egregious misappropriation of an SSA recipient's identity and active misdirection of government funds to ensure the funds never reached the intended account of the SSA recipient.  *Elwood*, 484 F. App'x at 253–54.  Elwood's actions could be none other than theft of government funds.  In this case, the Petitioner took no affirmative actions to divert the SSA deposits into her account.  The funds were deposited in accordance with Mr. Howell's instructions.

      Petitioner asks the court to apply *United States v. Osborne*, wherein the court applied a seven-factor test to determine "whether the government retained sufficient supervision and control over the funds involved such that the funds retained their federal character." *Osborne*, 886 F.3d 604, 609, 612 (6th Cir. 2018).  The facts in *Osborne* pertained to the Guard Recruiting Assistance Program, which provided incentives for "airmen, officers, and retirees to serve as Recruiting Assistants." *Id.* at 606.  "Osborne was accused of referring names of pre-existing recruits to [other recruiters] so that they could claim the recruiting incentive," and then give Osborne a kickback. *Id.*

      Similar to *Griffith*, the government placed restrictions on the use of the recruiting funds and the funds were disbursed based on an agreement to comply with "mandatory reporting requirements." *Id.* at 607.  The Sixth Circuit classified the money as being "where property that

originated with the federal government passes to private hands, but the government retains sufficient control so that the funds remain federal property." *Id.* at 609–10. The Sixth Circuit looked at six cases inside and outside of its circuit, all of which involved contracts or provisions about use of government funds, and then crafted the seven-factor text. *See id.* at 609–12. Most of the factors pertain to evaluating conditions or controls placed on the money. *See id.* at 612. The court is not persuaded that the *Osborne* factors support Petitioner's claim of actual innocence.

The most helpful case is *United States v. Jenkins*, Case No. 12-cr-34, 2012 WL 1571505 (E.D. Wis. May 3, 2012). The *Jenkins* court reviewed multiple cases from other jurisdictions about what constitutes government money, including one of the cases cited in *Osborne*, *see id.* at *2 (citing *United States v. Wheadon*, 794 F.2d 1277 (7th Cir. 1986)), and *Howard* and *Walker* cited above. As to SSA payments, the *Jenkins* court cogently synthesized various holdings as follows: "cases hold that stealing or intercepting a government check *prior* to its receipt and endorsement by the named payee violates 18 U.S.C. § 641." *Id.* (citing *United States v. Gill*, 193 F.3d 802, 804 (4th Cir. 1999)) (emphasis in original). "On the other hand, stealing funds after their direct deposit into the *intended recipient's* bank account (*with no 'strings attached'*) does not." *Id.* (citing *Howard*, 787 F. Supp at 771) (emphasis added). This court concludes the holding in *Jenkins* applies here.

In this case, Mr. Howell directed SSA to deposit his payments into a specified account, and then forgot to inform SSA that he had changed his account information. Thus, SSA had no knowledge that it was depositing funds into an account not controlled by Mr. Howell. Although SSA deposited the funds into the account specified by Mr. Howell, the funds were not deposited

9

into the intended recipient's bank account. Consequently, Petitioner's use of the funds occurred prior to their receipt by Mr. Howell and amounted to theft of SSA money. This means neither the facts nor caselaw supports Petitioner's claim of actual innocence, or that any further investigation by her counsel would have resulted in a reasonable probability of a different outcome.

Indeed, Petitioner's counsel consulted with Petitioner on important decisions, he acted within the range of competence required by criminal defense attorneys by properly advising Petitioner about the lack of a defense for her conduct, and he negotiated a plea of probation for her criminal activity. Thus, Petitioner's ineffective assistance of counsel claim is denied.

## II.     CERTIFICATE OF APPEALABILITY

When a court denies a § 2255 Petition, it must issue or deny a certificate of appealability. The Tenth Circuit has stated,

> We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, an applicant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."

*United States v. Young*, 664 F. App'x 686, 689 (10th Cir. 2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Caselaw is well-developed on the standard for ineffective assistance of counsel and actual innocence, and Petitioner has failed to make a substantial showing that she was denied a constitutional right. As to whether the issue presented deserves "encouragement to proceed further," the parties have cited no § 641 case where SSA funds are deposited into the account designated by the recipient, but the designation was based on error. Although there is no

10

case directly on point, caselaw appears consistent on how it has marked out boundaries on what constitutes theft of government money and what does not. Based on established caselaw, the court denies a Certificate of Appealability.

## **CONCLUSION**

For the reasons stated above, the court DENIES the § 2255 Petition to Vacate (ECF No. 1).

DATED this 6th day of October, 2022.

BY THE COURT:

_____
Clark Waddoups
United States District Judge
